**Delora REAGAN, Plaintiff,**

v.

**Carolyn W. COLVIN, Commissioner of Social Security, Defendant.**

No. 1:13–CV–185.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Filed Aug. 1, 2014.

Rex A. Wagner, The Wagner Law Office, Cleveland, TN, for Plaintiff.

Tammy O. Combs, U.S. Department of Justice, Chattanooga, TN, for Defendant.

## MEMORANDUM

CURTIS L. COLLIER, District Judge.

Plaintiff Delora Reagan ("Plaintiff") challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382. United States Magistrate Judge Susan K. Lee filed an R & R (Court File No. 14) recommending that the decision of the Commissioner be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g). The Commissioner timely filed an objection to the R & R (Court File No. 15), to which Plaintiff filed a response (Court File No. 16). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R & R (Court File No. 14).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Medical History

Plaintiff was forty-seven years old on the date of her administrative hearing.

On April 30, 2010, she applied for SSI alleging disability as of November 29, 2007 (Transcript ("Tr.") 62, 91–100). Plaintiff asserts that she suffers from a number of physical ailments, including asthma, arthritis, fibromyalgia, and non-alcoholic steato-hepatitis ("NASH").

In August 2010, Dr. William Holland, a consulting examiner, performed a medical examination on Plaintiff. Dr. Holland described Plaintiff as "obese" and noted that she was able to walk without "noticeable difficulty or gait disturbance" and to "sit and then rise from a seated position easily" and without assistance (Tr. 315). He also observed that her neck had no anterior tenderness or masses and that she had a "normal range of motion at the shoulders, elbows, wrists, and hands with 5/5 strength bilaterally" as well as "normal range of motion at the hips, knees, and ankles" (Tr. 316). Dr. Holland assessed that Plaintiff was able to "work six to eight hours" a day but would "need to be seated about 30 minutes of each hour" (Tr. 316). He also assessed that she could lift five to ten pounds frequently and up to twenty pounds occasionally (Tr. 316).

In December 2010, Dr. Suzan House, a rheumatologist, found that several of Plaintiff's joints or tendons were tender, swollen, or hypertrophic (Tr. 393). An x-ray of her lumbar spine indicated minimal degenerative joint disease and she was also diagnosed with osteoarthritis in her hands (Tr. 393–94). On a follow-up visit, in April 2011, Dr. House diagnosed Plaintiff with fibromyalgia and osteoarthritis of the hands and knees (Tr. 396–97).

In October 2010, Dr. Forrest Tilson, Plaintiff's primary care provider since 2009, saw her for worsening pain and chronic stiffness in her back, hips, and legs. Dr. Tilson diagnosed Plaintiff with fibromyalgia, NASH, diabetes, asthma, and hypertension (Tr. 331). In May 2011,

Plaintiff returned again to Dr. Tilson complaining of urinary frequency, fatigue, intermittent episodes of nausea, and chronic diarrhea. On July 19, 2011, Dr. Tilson conducted a clinical assessment of pain and determined that "pain was present to such an extent as to be distracting to adequate performance of daily activities or work" and "to such a degree as to cause distraction from task or total abandonment of task" (Tr. 361–62). He also noted that "pain and/or drug side effects can be expected to be severe and limit effectiveness" (Tr. 361–62). Two days later, Plaintiff returned to Dr. Tilson complaining of joint and muscle pain, difficulty sitting for a prolonged period of time, and an inability to ambulate for more than ten to fifteen minutes without having to stop due to pain.

Dr. Tilson completed a medical source statement in which he concluded that Plaintiff's ambulation was severely affected and opined that she could occasionally lift up to twenty pounds, frequently lift less than ten pounds, stand for one hour total in an eight-hour work day, and sit for one hour total in an eight-hour work day (Tr. 355–57, 60). In addition, the statement noted that Plaintiff was to never climb, stoop, crouch, kneel, or crawl (Tr. 357). He listed fibromyalgia as the only clinical finding used in support of his opinion (Tr. 355–360).

### B. Procedural Background

After Plaintiff's claim was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 27, 2011. A vocational expert ("VE") testified at the hearing and was asked if a hypothetical individual with certain physical limitations similar to Plaintiff's past medical history, if restricted to light work and the opportunity to alternate sitting and standing positions every thirty minutes, could perform Plaintiff's past

work or other work (Tr. 57). The VE testified that a position as a cafeteria monitor along with some assembly jobs would be within the posited hypothetical (Tr. 57). When questioned about a hypothetical based on Dr. Tilson's most recent assessment of Plaintiff, the VE testified there would not be any jobs that such an individual could perform (Tr. 58). The VE testified that if Plaintiff's testimony was taken as credible, then the alleged pain and need for frequent restroom breaks would disqualify her from performing any job (Tr. 58–59).

The ALJ analyzed Plaintiff's claim under the five-step evaluation outlined in 20 C.F.R. § 416.920(a)(4)(i-v) and made the following findings: (1) Plaintiff has not engaged in any substantial gainful activity since April 30, 2010, the application date; (2) Plaintiff has the following severe impairments: asthma, diabetes, fibromyalgia, NASH, and hypertension; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (4) Plaintiff is unable to perform her past work; (5) there are jobs that exist in significant numbers in the national economy that she can perform. He determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work except that she must have the option to sit or stand at thirty minute intervals and was limited to occasional kneeling, crouching, crawling, balancing, stooping, or climbing ramps or stairs. The ALJ issued an unfavorable decision on November 17, 2011, concluding that Plaintiff was not disabled (Tr. 12–18).

Plaintiff sought review from the Appeals Council and the appeal was denied (Tr. 1–5). She then timely filed the instant action on June 5, 2013 (Court File No.2). In October, 2013, Plaintiff filed a motion for summary judgment (Court File No. 9).

She argued the ALJ erred by failing to give controlling weight to her treating physician's opinion regarding her RFC and her pain (Court File No. 10). She challenged the ALJ's determination that her testimony regarding her pain and other symptoms was not credible and argued this determination was not based on substantial evidence. The Commissioner filed a motion for summary judgment (Court File No. 11) and argued that substantial evidence supports the weight accorded to Plaintiff's treating physician's opinion, substantial evidence supports the ALJ's credibility determination, and ultimately, that substantial evidence supports the ALJ's RFC finding (Court File No. 12).

The magistrate judge found that the ALJ did not comply with the treating physician rule due to the court's failure "to determine the weight, if any, assigned to Dr. Tilson's opinion and the reason for the weight assigned" (Court File No. 14). The magistrate judge concluded that the failure to comply with the treating physician rule was not harmless error and Plaintiff's claim should be remanded. She recommended that Plaintiff's motion for judgment on the pleadings be granted in part to the extent that it seeks remand, the Commissioner's motion for summary judgment be denied, and the Commissioner's decision denying benefits be reversed and remanded (id.). The Commissioner timely objected to the R & R (Court File No. 15).

## II. STANDARD OF REVIEW

■■■ This Court must conduct a de novo review of those portions of the R & R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's—review is limited to determining if the ALJ's

findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). Substantial evidence is greater than a scintilla but less than a preponderance. *Brainard,* 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.2003). The substantial evidence standard presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir.1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90–3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

### III. DISCUSSION

The Commissioner argues the magistrate judge erred when she concluded that the ALJ failed to comply with the treating physician rule. Specifically, the Commissioner contends that "[a]lthough the ALJ did not strictly comply with the terms of the regulation by failing to specify the weight accorded to the opinion, [the] reasons met the procedural safeguard." (Court File No. 15) (alteration in original). The ALJ rejected the opinion at issue by noting that it was "not supported by the underlying treatment records" (Tr. 16).

The Commissioner asserts that the decision did not prejudice Plaintiff nor did it deprive her of her substantive rights (Court File No. 15). For the following reasons, the Court agrees with the magistrate judge's conclusion that the ALJ did not provide good reasons for rejecting the opinion of Plaintiff's treating physician and that this did not constitute harmless error.

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011). In making determinations of disability, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir.2013). The treating physician rule requires that "[a]n ALJ [ ] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If the ALJ does not give the opinion controlling weight, then the opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); *see also Cole,* 661 F.3d at

938 ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)) (internal quotation marks omitted).

■ A failure to follow these procedural requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.2007). The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)) (alteration in original) (internal quotation marks omitted).

It is uncontested that Dr. Tilson is Plaintiff's treating physician and therefore subject to the treating physician rule. The ALJ failed to state explicitly that he was not assigning Dr. Tilson's opinion controlling weight or to specify what, if any, weight he gave to Dr. Tilson's opinion. It is, however, fairly apparent from the transcript that the ALJ was not assigning Dr. Tilson's opinion controlling weight. The ALJ opined that Dr. Tilson's opinion was not fully supported by the record and asserted that it was inconsistent with the opinions of Dr. Suzan House, Dr. William Holland, and the state agency non-examining consultative opinion. The ALJ instead accorded "considerable weight" to Dr. Holland's opinion and only explained this weight assignment with a statement that he found Dr. Holland's opinion to be "well supported." The ALJ ultimately accepted Plaintiff's fibromyalgia diagnosis but found that Dr. Tilson's underlying treatment records were not supportive of his assessment that Plaintiff could not sit, stand, or walk for more than one hour in an eight hour day.

The Commissioner admits that the ALJ did not explicitly state the specific weight he assigned to Dr. Tilson's opinion. The Commissioner argues that the ALJ's failure to state the weight assigned to the opinion is harmless error because the ALJ met the goal of 20 C.F.R. § 416.927(c)(2), the treating source regulation, by providing several reasons for finding that Dr. Tilson's opinion was not supported by the record.

■ However, the ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The ALJ did not identify substantial evidence that is supposedly inconsistent with Dr. Tilson's opinions. As the Sixth Circuit has noted,

the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that

opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377.

■ The ALJ failed to provide "good reasons" and only provided reasons that did not meet the level of specificity necessary to satisfy the goals of the regulation. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining source opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. The ALJ's decision does not permit Plaintiff or a reviewing court to have a clear understanding of the reasons for the weight given—if any, as the Commissioner has to yet to clarify whether the opinion was rejected or discounted—to Dr. Tilson's opinion. *See id.* at 377 ("The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation.") (citing *Wilson,* 378 F.3d at 544) (alteration in original).

■ Remand for a violation of the "good reasons" rule may not be required if the error is de minimis. *Wilson,* 378 F.3d at 544, 547. A violation of the "good reasons" rule can only be harmless error under three circumstances: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.,* 375 Fed.Appx. 543, 551 (6th Cir.2010) (quoting *Wilson,* 378 F.3d at 547).

■ The Commissioner did not meet the goal of the regulations because the ALJ's decision does not permit meaningful judicial review. In addition, Dr. Tilson's opinion was not patently deficient on its face, nor did the ALJ appear to treat it as patently deficient in his opinion. Finally, the ALJ did not make findings consistent with Dr. Tilson's opinion; rather, the ALJ made findings contrary to Dr. Tilson's opinion and only expressly gave weight to the opinion of a consultative physician. The ALJ's violation of the treating physician rule was not harmless. Thus, the Commissioner fails to establish error on the part of the magistrate judge.

## IV. CONCLUSION

The Court has considered the Commissioner's objection after its complete review of the record, and has found that it is without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R & R (Court File No. 14). The Court will **GRANT IN PART** Plaintiff's motion for summary judgment to the extent that it seeks remand and will **DENY IN PART** Plaintiff's motion for summary judgment to the extent it seeks an award of benefits (Court File No. 9). The Court will **DENY** the Commissioner's motion for summary judgment (Court File No. 11) and will **REVERSE** and **REMAND** the Commissioner's decision denying benefits.

**An Order shall enter.**

## *REPORT AND RECOMMENDATION*

SUSAN K. LEE, United States Magistrate Judge.

Plaintiff Delora Reagan ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Se-

curity ("Commissioner" or "Defendant") denying her Supplemental Security Income ("SSI") benefits. Both Plaintiff and Defendant have moved for summary judgment [Docs. 9 & 11]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to properly weigh the treating physician's opinion and failed to properly determine Plaintiff's credibility.

For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 9] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 11] be **DENIED;** and (3) the Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for SSI on April 30, 2010, alleging disability as of May 7, 2007 (Transcript ("Tr.") 62, 91–100). Plaintiff's claim was denied initially on October 22, 2010, and upon reconsideration on April 12, 2011 (Tr. 62–68, 72–74). Plaintiff requested a hearing, and it was held on October 27, 2011. Plaintiff was represented at the hearing by an attorney. The ALJ issued an unfavorable decision on November 17, 2011, determining Plaintiff was not disabled because Plaintiff did not have an impairment that met or medically equaled a listed impairment and Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work that existed in the national economy (Tr. 14–18). Plaintiff filed an appeal but the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable deci-

sion of the Commissioner (Tr. 8). Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was 47 years old on the date of her administrative hearing and she is a high school graduate (Tr. 48, 91, 112). Plaintiff had previously worked as a part-time cafeteria monitor, an assembly worker packing batteries, sewing machine operator, and a part-time substitute teacher (Tr. 56–57, 60). She also spent time working at her husband's small appliance repair business (Tr. 47–48). Plaintiff has not worked since May 2007 (Tr. 48).

### B. Medical Records

Plaintiff's extensive medical records reflect both physical and mental issues addressed by Plaintiff's own physicians as well as independent examiners, but her appeal focuses on her physical limitations. The following summary of Plaintiff's medical records addresses the pertinent issues raised by the parties and, although not specifically mentioned herein, all pertinent portions of the record have been reviewed.

Plaintiff's initial primary care physician was Dr. James Sego who saw Plaintiff starting prior to 2002 until 2009 (Tr. 211–289). In August of 2009, Dr. Forrest Tilson became Plaintiff's primary care provider. Dr. Tilson referred Plaintiff to Dr. Suzan House, a rheumatologist. Plaintiff also saw Dr. Timothy Viser in May 2007, Dr. Paul Brundage in June 2008, Dr. Benjamin Biller for a psychological evaluation in July 2010, Dr. Brad Millhouser in August 2010, Dr. William Holland in August 2010, and Dr. Michael Hollie from 1999–2011.

In August 2010, Plaintiff was seen by Dr. Holland, a consulting examiner. Dr.

Holland described Plaintiff as obese, well groomed, and casually dressed. Dr. Holland noted Plaintiff "ambulates throughout the clinic without noticeable difficulty or gait disturbance; is able to sit and then rise from a seated position easily and gets on and off the examination table unassisted; her neck was supple, with no anterior tenderness or masses with "flexion 45 degrees, extension 30 degrees, lateral flexion 45 degrees bilaterally, rotation 60 degrees bilaterally" (Tr. 315). Dr. Holland also noted Plaintiff had a "normal range of motion at the shoulders, elbows, wrists, and hands with 5/5 grip strength bilaterally. Normal range of motion at the hips, knees, and ankles ... [s]tation and gait testing including tandem and toe/heel walking were normal" (Tr. 316). Dr. Holland's assessment was that "she could work six to eight hours out of an eight hour day but will need to be seated about 30 minutes out of each hour. She could stand or walk for short distances for 20 to 30 minutes out of each hour" (Tr. 316). He noted her lifting should be limited to five to ten pounds frequently and up to 20 pounds occasionally (Tr. 316).

In October 2010, Dr. Tilson saw Plaintiff for worsening pain and chronic stiffness in her back, hips, and legs. Plaintiff was diagnosed with fibromyalgia, non-alcoholic steatohepatitis ("NASH"), diabetes, asthma, and hypertension (Tr. 331). In November 2010, Plaintiff came in for a follow-up regarding her blood work (Tr. 329).

In December 2010, Dr. House found Plaintiff's trapeziometacarpal joints were tender with mild hypertrophy; her MTPs (metatarsal phalangeal) were mildly tender; her PIP (bilateral proximal interphalangeal) were hypertrophic; and her Achilles was swelling or tender. Dr. House performed an x-ray of Plaintiff's lumbar spine which indicated minimal degenerative joint disease (Tr. 391). Dr. House

also diagnosed osteoarthritis in Plaintiff's hands (Tr. 393). In April 2011, Plaintiff returned to Dr. House for follow-up and complained of frequent pain in her knee joints and muscles. Dr. House noted on physical examination: "[T]here is hypertrophy of the PIPs more so than the DIPs [distal interphalangeal joint] .... Knees are hypertrophic without effusion.... There is diffuse soft tissue tenderness." Dr. House also diagnosed fibromyalgia and osteoarthritis of the hands and knees (Tr. 396).

In May 2011, Plaintiff went back to Dr. Tilson with complaints of urinary frequency, fatigue, intermittent episodes of nausea and chronic diarrhea. On July 19, 2011, Dr. Tilson completed a clinical assessment of pain (Tr. 361–62). Dr. Tilson circled "pain is present to such an extent as to be distracting to adequate performance of daily activities or work"; "greatly increased pain and to such a degree as to cause distraction from task or total abandonment of task"; and "pain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Tr. 361–62).

On July 21, 2011, Plaintiff was seen by Dr. Tilson and she complained of joint and muscle pain consistent with fibromyalgia, of having difficulty sitting for prolonged periods of time, and of not being able to ambulate for more than ten to fifteen minutes without having to stop because of joint and muscle pain in her legs. Dr. Tilson completed a medical source statement during this appointment which stated Plaintiff could occasionally lift up to 20 pounds and frequently lift less than ten pounds and could stand for one hour total in an eight-hour work day and sit for one hour total in an eight-hour work day (Tr. 355–57). Dr. Tilson also noted Plaintiff's ambulation was severely affected (Tr. 360). Dr. Tilson listed chronic fibromyalgia as

the only clinical finding used in support of his opinion (Tr. 355–60).

### C. Hearing Testimony

At the hearing on October 27, 2011, Plaintiff testified that she fell ill around May 7, 2007, and her asthma, diabetes, and pain continued to worsen until April 2010 when she filed her application for SSI (Tr. 48). Plaintiff testified about her limited daily routine, which consisted of trying to do chores, going back and forth to the bathroom, and reclining in an attempt to get comfortable (Tr. 48). The ALJ asked if Plaintiff had friends or family over and Plaintiff stated that they used to come over, but not as much now because of her illnesses. Plaintiff testified that her husband goes shopping, and she only goes "once in a blue moon" (Tr. 49). Plaintiff testified she has probably one good week out of the month (Tr. 49).

Plaintiff testified about her functional limitations, and stated that she can lift two pounds comfortably; she can sit for about 15 to 20 minutes comfortably, and can walk about 100 feet comfortably (Tr. 50). When asked if she can stand in one place comfortably, she responded: "[n]ot comfortably. I can stand. There's no doubt about that" (Tr. 50–51). Plaintiff testified that she had trouble gripping things and often broke objects. She stated she can write notes using her hands. Plaintiff also testified that she had trouble reaching into a refrigerator and reaching overhead (Tr. 51). Plaintiff also claimed to need to use the bathroom once every 30 minutes (Tr. 52).

Plaintiff testified about various doctor's visits, and recalled that Dr. House diagnosed her with fibromyalgia and arthritis but Dr. Stein said she only had a touch of arthritis (Tr. 53–54). Plaintiff testified about difficulties with breathing because of her asthma, stomach sickness in the morn-ings, and constant pain with fluctuating severity (Tr. 53–54). Plaintiff also testified that she had serotonin syndrome, and noted that she hallucinated due to antidepressant medication (Tr. 54). Finally, Plaintiff claimed to have difficulty with her memory, paranoia, fatigue, and anxiety (Tr. 55–56).

A vocational expert ("VE") also testified at the hearing (Tr. 56–60). When asked whether a hypothetical individual could perform Plaintiff's past work or other work if the individual was restricted to light work and afforded the opportunity to alternate sit/stand positions every 30 minutes, the VE testified a cafeteria monitor job would be within that hypothetical, as well as some assembly jobs (Tr. 57). When asked another hypothetical based on Dr. Tilson's assessment, the VE testified there would not be any jobs such an individual could perform (Tr. 58). Finally, the VE stated there were no jobs that Plaintiff could perform if her testimony was found to be credible because of the alleged pain and need for frequent restroom breaks (Tr. 59).

### III. ELIGIBILITY AND THE ALJ'S FINDINGS

#### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 Fed.Appx. 637, 646 (6th Cir.2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 Fed.Appx. 856, 862 (6th Cir.2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks,* 413 Fed.Appx. at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is 'not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir.2009). The claimant bears the burden to show the extent of her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512–13 (6th Cir.2010).

**B. The ALJ's Findings**

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 30, 2010, the application date (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: asthma, diabetes, fibromyalgia, NASH, and hypertension (Tr. 12). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. 14). Next, the ALJ found Plaintiff retained the RFC to perform a reduced range of light work except that Plaintiff must have the option to sit or stand at 30 minute intervals (Tr. 15). Further, the ALJ found Plaintiff was limited to occasional kneeling, crouching, crawling, balancing, stooping, or climbing ramps or stairs (Tr. 15). At step four, the ALJ concluded that Plaintiff was unable to perform her past work (Tr. 17). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 17).

**IV. ANALYSIS**

Plaintiff appears to assert two significant arguments in support of her claim that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues the ALJ failed to properly weigh the opinion of her treating physician opinion, Dr. Tilson, regarding her limitations and her pain. Second, Plaintiff asserts the ALJ's credibility finding was not based on substantial evidence.

**A. Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.,* 474

F.3d 830, 833 (6th Cir.2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir.1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir.1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08–CV–189, 2009 WL 2579620, at *6 (E.D.Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08–CV–651, 2009 WL 3153153, at *7 (W.D.Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms ... with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir.1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974–75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir.2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed.Appx. 508, 511 (6th Cir.

2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 Fed.Appx. 109, 113 (6th Cir. 2010)).

## B. Treating Source Opinion

It is undisputed that Dr. Tilson is a treating physician and that his opinion is subject to the treating source rule. Dr. Tilson opined that Plaintiff's chronic fibromyalgia caused disabling limitations and persistent/distracting pain (Tr. 355–62). Dr. Tilson opined Plaintiff's ability to work was severely limited, indicating Plaintiff was capable of occasionally lifting and/or carrying 20 pounds and less than ten pounds frequently; standing and walking were affected and she could walk for a total of one hour in an eight hour workday and sit for a total of one hour in an eight hour workday. She could never climb, stoop, crouch, kneel, or crawl and reaching, handling, and pushing/pulling were affected (Tr. 355–60). Dr. Tilson also completed a Clinical Assessment of Pain Form and noted that Plaintiff has pain present to such an extent as to be distracting to the adequate performance of daily activities or work; and physical activity will greatly increase pain to such a degree as to cause distraction from task or total abandonment of task (Tr. 361–62).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original)). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opin-

ion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 192–93 (6th Cir.2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96–2p, 1996 WL 374188, at *4 (July 2, 1996)). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 Fed.Appx. 802, 804 (6th Cir.2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938–39 (6th Cir.2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (alteration in original)

(quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)).

In the same vein, the Sixth Circuit also recently took issue with an ALJ merely stating the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit held "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians ... the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Id.* at 379–80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940

(quoting *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir.2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure either to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons can be grounds for remand. *Gayheart*, 710 F.3d at 380; *Cole*, 661 F.3d at 939–40.

The ALJ discussed Dr. Tilson's treatment and opinion in his unfavorable decision (Tr. 16). As Defendant concedes, while the ALJ indicated some skepticism regarding Plaintiff's fibromyalgia diagnosis and he failed to specifically discuss Dr. Tilson's trigger point findings, the ALJ ultimately accepted Plaintiff's fibromyalgia diagnosis [Doc. 12, Page ID # 498]. While accepting the diagnosis, The ALJ found Dr. Tilson's underlying treatment records were not supportive of his opinion that Plaintiff was not able to sit, stand, and walk for more than one hour in an eight hour day. The ALJ highlighted that Dr. Tilson merely noted chronic fibromyalgia when asked to state the clinical findings used to support his opinion. The ALJ seemingly questioned Dr. Tilson's endorsement of Plaintiff's complaints of debilitating pain. The ALJ found that Dr. Tilson's treatment notes show complaints of only some fatigue and that the treatment records show normal range of motion testing and good and equal strength in the upper extremities. As argued by Defendant, the ALJ's decision indicates he found the *extent* of the limitations indicated by Dr. Tilson's medical opinion was not well supported by the treatment records.

It is undisputed that the ALJ failed to specify the amount of weight he assigned to Dr. Tilson's opinion. Plaintiff argues that this failure requires remand. Defendant counters that the ALJ's failure to specify the weight given to Dr. Tilson's

opinion is harmless error. Defendant claims there is no requirement that the ALJ use specific words, and that the ALJ is only required to provide a clear rationale for giving less than controlling weight to the treating physician's opinion. Defendant argues that the ALJ met the goal of 20 C.F.R. § 416.927(c)(2) by providing reasons for his implicit rejection of Dr. Tilson's opinion.

The ALJ failed to explicitly state that he was not assigning Dr. Tilson's opinion controlling weight, but it is obvious he is not. "A finding that a treating source medical opinion ... is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.2009). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole*, 661 F.3d at 938. Significantly, the ALJ also failed to specifically state what, if any, weight he gave to Dr. Tilson's opinion and the reasons for that weight.

The ALJ appears to be in agreement with Dr. Tilson's diagnosis as he found fibromyalgia to be a severe impairment; but, not in agreement with Dr. Tilson's opinion as to the severity and extent of the limitations caused by the fibromyalgia. Defendant concedes the ALJ did not explicitly state the specific weight he assigned to Dr. Tilson's opinion, but then Defendant confusingly argues the ALJ "discount[ed]" his opinion at one point and "implicitly rejected" the opinion at another point in Defendant's memorandum [Doc. 12 at Page ID # 502–03]. Although it is a crucial issue, Defendant only fleetingly comments on the ALJ's failure to state the weight assigned to Dr. Tilson's opinion by claiming the failure is harmless because

the ALJ otherwise met the goal of the treating source regulation by discussing several reasons for finding Dr. Tilson's opinion not supported by the record. To date, it is unclear whether Defendant is claiming the ALJ gave some discounted weight to the opinion or gave it no weight by rejecting it in its entirety.

As noted above, some deviation from the rules that require an ALJ to state the weight given to a treating physician's opinion is not necessarily fatal to an ALJ opinion.

> Because the treating-source rule is not a procrustean bed, requiring an arbitrary conformity at all times, we excuse a decision's noncompliance with its provisions where the decision has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though it has not complied with the terms of the regulation. So long as the decision permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, we look past such procedural errors.

*Francis*, 414 Fed.Appx. at 805 (citations, alterations, and internal quotation marks omitted).

Defendant does not argue that Dr. Tilson's opinion is patently deficient, and the ALJ's opinion does not appear to treat his opinion as patently deficient either. So the remaining issue is whether the ALJ's decision permits Plaintiff and a reviewing court to have a clear understanding of the reasons for the weight given Dr. Tilson's opinion. In only briefly touching on this issue, Defendant does not have a consistent position on whether the ALJ gave the opinion some discounted weight or rejected it in its entirety. To the extent Defendant argues the ALJ gave no weight to the opinion of Dr. Tilson (stating the ALJ "implicitly rejected the opinion by discuss-

ing several reasons for finding the opinion not supported by the record [Doc. 12 at Page ID # 503] ), this argument fails because the ALJ's determination does not seem to be a complete "rejection" as the RFC seems to incorporates some of Dr. Tilson's opinion. It is highly unlikely that the ALJ entirely rejected Dr. Tilson's opinion. To the extent Defendant argues the ALJ gave a discounted weight to the opinion of Dr. Tilson (stating the ALJ properly "discount[ed]" the opinion [Doc. 12 at Page ID # 502] ), this argument and the ALJ's decision leaves a claimant and a reviewing court wondering what, if any, weight, was given to the opinion and why. This lack of explanation is even more perplexing because the ALJ explicitly gave "considerable weight" to the opinion of Dr. Holland, a consultative examiner, making the lack of an explicit statement of the weight given to the opinion of the treating physician all the more confusing.

The ALJ's failure to give state whether he was rejecting (no weight) or discounting (something less than controlling but more than zero) Dr. Tilson's opinion is not harmless. Furthermore,

> [a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different

outcome on remand is unlikely. A procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.

*Wilson,* 378 F.3d at 546 (citations, alterations, and internal quotation marks omitted).

Due to the reviewing court's inability to determine the weight, if any, assigned to Dr. Tilson's opinion and the reasons for the weight assigned, I **FIND** the ALJ did not comply with the treating physician rule and I **CONCLUDE** this failure was not harmless error. Accordingly, I **CONCLUDE** Plaintiff's claim must be remanded to the Commissioner for compliance with the treating physician rule and full consideration of Dr. Tilson's opinion.[1]

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** [2] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 9] be **GRANTED IN PART** and **DENIED IN PART**.

---

1. Plaintiff also raised other issues, including the propriety of the ALJ's credibility determination. Because the credibility determination may be impacted by a proper consideration and explanation of the weight given to Dr. Tilson's opinion as noted herein, I do not address the credibility determination or other issues raised by the parties.

2. Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal

Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn,* 474 U.S. 140, 149 n. 7, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers,* 829 F.2d 1370, 1373 (6th Cir.1987).

2) The Commissioner's motion for summary judgment [Doc. 11] be **DENIED.**

3) The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

June 3, 2014.