**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0452n.06

Case No. 16-5175

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LARRY CONNER, | ) | |
| | ) | **FILED**<br>Aug 05, 2016<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | OPINION. |
| | ) | |
| | ) | |

BEFORE:    MOORE, MCKEAGUE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**    Larry Conner appeals the denial of disability benefits, making two arguments on appeal: (1) the ALJ erred in discounting the weight of the May 2013 opinion of his treating physician without good reason; and (2) the ALJ erred in finding that substantial evidence supported the Social Security Commissioner's finding that he is capable of performing other work.  We find that both arguments fail and **AFFIRM** the district court's decision.

**I.**

**A.    Procedural History**

On September 25, 2012, Conner applied for disability insurance benefits under Title II of the Social Security Act, alleging that he has been disabled since July 21, 2010.  (R. 7-6, PageID

138.) Conner contends that he developed a disability due to degenerative back disease, diabetes, heart problems, and high blood pressure, and had to stop working on July 21, 2010. (R. 7-4, PageID 71; R. 7-7, PageID 157, 161.) On October 31, 2012, the Social Security Administration ("SSA") denied Conner's application for benefits. (R. 7-5, PageID 93, 100.) Upon reconsideration of Conner's claim on November 19, 2012, the SSA again denied his application. (R. 7-5, PageID 99–100.)

At Conner's request, the Administrative Law Judge ("ALJ") held a hearing on September 18, 2013. (R. 7-3, PageID 62.) On November 6, 2013, the ALJ issued a decision denying Conner's request for benefits after finding that Conner was not under a disability because he retained the residual functional capacity ("RFC") to perform past relevant work, as well as other medium work. (R. 7-3, PageID 50–57.) On January 9, 2015, the SSA's Appeals Council denied Conner's request for review, and the ALJ's decision became the final decision of the Commissioner. (*Id*. at 32–36.)

On February 23, 2015, Conner filed a complaint in the United States District Court for the Western District of Tennessee, requesting that the court remand the case for further administrative proceedings. The district court denied Conner's claims, affirming the Commissioner's decision, and this appeal timely followed. (R. 18, PageID 678.)

### B.     Factual Background

Conner was sixty years old at the time of his hearing before the ALJ. (R. 18, PageID 679.) During a hospital visit on August 1, 1994, Conner complained of chest tightness, heart palpitations, bilateral arm numbness, and left-arm pain. (R. 18, PageID 680.) Dr. Todd Edwards conducted a cardiac catheterization. (*Id.*) The results ruled out coronary artery disease and revealed minimal luminal irregularity in Conner's mid-LAD (left anterior descending artery).

(*Id.*)  Upon discharge, Dr. Edwards instructed Conner to follow up with a visit in one year, to find an internal medicine doctor, and to begin a low sodium diet.  (*Id.*)

On September 4, 1994, Conner reported to the hospital for another cardiac catheterization conducted by Dr. Edwards.  (*Id.*)  The test produced normal results.  (R. 7-9, PageID 312–13.)

On August 7, 2005, Conner was admitted to the Emergency Room with complaints of sharp chest pain radiating down his left arm, chest tightness, and heart palpitations.  (R. 18, PageID 681.)  Conner underwent a cardiac workup, which was negative for an acute cardiac event.  The next day, Conner underwent a treadmill thallium stress test, which was negative for ischemia.  On August 9, 2005, Conner was deemed stable for discharge.  (R. 7-9, PageID 301–02.)

On August 11, 2005, Conner reported to the hospital for another cardiac catheterization, which was completed by Dr. Stacy Smith.  (R. 18, PageID 681.)  Dr. Smith opined that Conner's chest pain most likely was not a result of coronary ischemia.  (*Id.*)  She noted that Conner did have frequent ectopy, but because he had normal left ventricle function and no obstructive disease, she recommended continued management.  (*Id.*)

On September 21, 2009, Conner underwent another cardiac catheterization, which, this time, Dr. David Wolford conducted.  Dr. Wolford noted that Conner had mildly elevated left ventricular end-diastolic pressure and mild coronary artery disease, principally involving the left anterior descending coronary and circumflex arteries.  (R. 18, PageID 681.)  Dr. Wolford concluded, however, that Conner had "[n]o significant disease."  (*Id.*)

On May 8, 2011, complaining of thigh, leg, and chest pain, Conner was admitted for cardiac catheterization, which Dr. Frank McGrew completed.  (*Id.*)  Dr. McGrew concluded that the catheterization revealed "moderately severe coronary artery disease to be managed

medically." (*Id.*) He also noted that he planned a "conference" with another doctor to discuss with Conner how to manage his disease. However, Conner signed out of the hospital before the conference. (R. 18, PageID 681–82.)

### i. Treatment at OrthoMemphis and Stern Cardiovascular Center

Throughout most of this time period, Conner also saw an orthopedic specialist, Dr. Samuel Murrell, at OrthoMemphis. Conner told Dr. Murrell that he "has had difficulty with his back for some time." (R. 7-8, PageID 230.) Conner returned to Dr. Murrell on January 14, 2011 to review MRI (magnetic resonance imaging) results, which showed a disc protrusion at L4-L5. (*Id.* at 229.) Dr. Murrell updated his impression to degenerative disc disease of L4-L5 with left sciatica. (*Id.*) When Conner returned to see Dr. Murrell on February 11, 2011, he continued to complain of discomfort in his back and in his legs despite physical therapy. Dr. Murrell recommended an epidural steroidal injection, which he subsequently performed on February 25, 2011. (*Id.* at 227.) On March 18, 2011, Conner saw Dr. Murrell with continued complaints about discomfort in his leg and left hip. (*Id.* at 226.) When Conner returned one month later, Dr. Murrell gave Conner another epidural injection. (R. 18, PageID 688.)

Conner continued to make follow-up visits with Dr. Murrell and consistently complained of low back pain. (R. 7-8, PageID 215.) The following year, Conner complained about increasing low back and left leg pain, describing it as "much [more] severe than he had previously." (*Id.* at 219.) Dr. Murrell advised Conner to undergo an MRI scan and receive an epidural steroid injection. (*Id.* at 220.) Shortly afterwards, Conner was admitted to a surgical center for an L5-S1 interlaminar epidural steroid injection, which Dr. Michael Sorenson performed. (*Id.* at 218.) On one examination, Dr. Murrell advised: "I have told him that I

would not recommend surgery, and he is in agreement . . . He has inquired about applying for Social Security Disability, and I have encouraged him in his efforts." (*Id.* at 215.)

On March 7, 2012, Conner underwent a CT (computed tomography) angiography examination. Dr. Edwards concluded from the exam results that Conner did "not have any significant above the ankle disease at all on CT angiography." (R. 7-9, PageID 264, 314–15.) Conner also underwent a CT scan of his head on June 24, 2013. The results indicated no acute abnormality. (R. 7-19, PageID 563.)

### ii.      Treatment at the Foundation Medical Group

Conner was treated at Foundation Medical Group ("Foundation") from 2009 until 2013. At Conner's first recorded visit on August 12, 2009, nurse practitioner Carol Simmons assessed him with hypertension, gastroesophageal reflux disease, and hyperlipidemia. (R. 7-12, PageID 428–29.)

On December 17, 2009, Conner visited Simmons at Foundation with complaints of back pain. Simmons gave him trial medication and offered to refer him to a specialist. (R. 18, PageID 684.)

On February 19, 2010, Conner was treated by Dr. Lynda Freeland at Foundation. Conner described to Dr. Freeland his sharp pain between his shoulder blades, and, upon examination, Dr. Freeland discovered an abdominal mass and ordered a CT scan of his abdomen. The CT scan results were unremarkable. (*Id.* at 685.) Dr. Freeland diagnosed Conner with chest pain, benign essential hypertension, gastroesophageal reflux disease, hyperlipidemia, and backache. (R. 7-11, PageID 358; R. 7-12, PageID 421–23.)

On February 22, 2010, Conner returned to Foundation and underwent an x-ray of his thoracic spine. Dr. Freeland indicated that the x-ray "showed no compression fractures, just degenerative changes." (*Id*. at 419–20.)

On June 1, 2010, Conner visited Dr. Freeland and stated that he had weakness on his left side, drooping in his left eye, and "a little trouble" finding words. (R. 18, PageID 685.) Dr. Freeland assessed Conner with benign essential hypertension, hyperlipidemia, and probable CVA (cerebrovascular accident), and ordered an MRI of his head. The MRI did not indicate signs of a stroke. (*Id.*) Dr. Freeland informed Conner that he had diabetes or reactive hypoglycemia and instructed him to follow up with her. (R. 7-11, PageID 352; R. 7-12, PageID 416–17.)

On June 22, 2010, Dr. Freeland examined Conner and diagnosed him with type II diabetes mellitus, in addition to his previous diagnoses. (R. 18, PageID 685.) She instructed him to lose weight, to eat a controlled carbohydrate diet, and to test his blood sugars at home. (R. 7-12, PageID 413–14.)

Conner reported for diabetes, hypertension, and cholesterol check-ups with Dr. Freeland on the following dates: July 23, 2010, September 20, 2010, February 22, 2011, March 28, 2011, June 27, 2011, September 27, 2011, June 19, 2012, and September 17, 2012. The records from these visits indicate that Conner's diagnoses and recommended treatment remained the same. (R. 18, PageID 686.) On October 16, 2012, Dr. Freeland, Conner's treating physician, completed an SSA form titled "Medical Source Statement of Ability to Do Work-Related Activities." (R. 18, PageID 689–90.) He opined that Conner can occasionally lift/carry up to twenty pounds, can sit for fifteen to twenty minutes at a time without interruption, and can stand/walk for two hours at a time without interruption. (*Id.*) Dr. Freeland concluded that

Conner can never push/pull with his hands or climb stairs, ramps, ladders, or scaffolds because of his back pain. (*Id.* at 690.) She further reported that Conner can occasionally stoop/kneel and can frequently balance/crawl. Last, she indicated that Conner should never be exposed to extreme cold. (R. 7-12, PageID 454–59.)

On October 23, 2012, Tennessee Disability Determination Services ("DDS") medical consultant Dr. James Gregory completed an RFC assessment regarding Conner's physical limitations. (R. 18, PageID 690.) Dr. Gregory concluded that Conner can occasionally lift/carry twenty pounds, can frequently lift/carry ten pounds, can stand/walk for about six hours in an eight-hour workday, and can sit for about six hours in an eight-hour workday. (*Id.*) Dr. Gregory further opined that Conner has unlimited ability to push/pull, but needs to be able to alternate between sitting and standing to relieve pain and discomfort every thirty minutes. (*Id.*) Additionally, Dr. Gregory noted that Conner can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders/ropes/scaffolds. (*Id.*) Dr. Gregory further opined that Conner needs to avoid concentrated exposure to extreme cold and heat. In conclusion, Dr. Gregory stated, "[Conner] has pain out of proportion to his physical findings or imaging findings. Symptoms are considered partially credible." (R. 7-4, PageID 75–77.)

On November 28, 2012, DDS medical consultant Dr. Christopher Fletcher also completed an RFC assessment regarding Conner's physical limitations. Dr. Fletcher opined that Conner can occasionally lift/carry twenty pounds, can frequently lift/carry ten pounds, can stand/walk for about six hours in an eight-hour workday, and can sit for about six hours in an eight-hour workday. Additionally, Dr. Fletcher concluded that Conner can frequently climb ramps/stairs, kneel, and crawl, can occasionally climb ladders/ropes/scaffolds, stoop, and crouch, and can balance and push/pull without limitation. Dr. Fletcher noted that Conner needs to avoid

concentrated exposure to extreme cold and heat. Dr. Fletcher concluded as follows: "[Conner] has pain out of proportion to his physical findings or imaging findings. Symptoms are considered partially credible. [Conner] failed to attend physical therapy as prescribed further reducing credibility . . . No basis to support need for frequent position changes." (*Id*. at 85–87.)

On January 16, 2013, Conner went to Foundation for a wellness exam. (*Id.*) Conner complained of ongoing and worsening back pain. Dr. Freeland diagnosed Conner with benign essential hypertension, esophageal reflux, gastroesophageal reflux disease, blood in the stool, hyperlipidemia, type II diabetes mellitus, and backache. (*Id.*) Conner followed up with Dr. Freeland at Foundation on June 24 and July 22, 2013. (R. 7-20, PageID 572–78.)

On May 22, 2013, Dr. Freeland completed another medical assessment regarding Conner's impairments. (R. 18, PageID 691.) She noted that she had seen Conner every three months for a period of over ten years, and listed his diagnoses as degenerative disc disease, diabetes, angina, and hypertension. (*Id.*) She stated that Conner's prognosis was fair, but that no improvement in his condition was expected. (*Id.* at 692.) Dr. Freeland opined that Conner's constant and severe back pain, as well as the sedating effects of his medications, would constantly interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*) She further indicated that Conner was incapable of tolerating even "low stress" jobs. (*Id.*) She concluded that Conner needs a job that permits him to shift among sitting, standing, and walking at-will. (*Id.*) She also stated that Conner needs to be able to take unscheduled work breaks every thirty minutes to an hour, and to rest for ten to fifteen minutes before returning to work. (*Id.*) Last, Dr. Freeland opined that Conner was likely to be absent from work more than four days per month as a result of his physical impairments. (R. 7-13 PageID 401–03; R. 7-20, PageID 584–88.)

**II.**

We take this appeal directly from the magistrate judge pursuant to 28 U.S.C. § 636(c)(3) and Federal Rule of Civil Procedure 73(c). We review district court decisions regarding social security disability benefits de novo. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "However, [our] review 'is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'" *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In determining whether substantial evidence exists, we examine the evidence in the record as a whole and "take into account whatever in the record fairly detracts from its weight." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). This means that if we find substantial evidence to support the Commissioner's decision, we must affirm and may not inquire whether the record could support a different decision. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, we may not resolve conflicts in evidence or decide questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

**A.**

Conner first argues that the ALJ erred in not discussing the 2013 medical opinion of treating physician Dr. Lynda Freeland. (Appellant's Br. 18–23.) Specifically, Conner contends that the ALJ gave the May 2013 statement of Dr. Freeland "no weight" in its determination of Conner's entitlement to benefits. (Appellant's Br. 19.) This argument fails.

The entitlement to social security benefits is determined by a five-step analysis as determined by the ALJ:

(1)  The claimant must not be engaged in substantial gainful activity;
(2)  The claimant suffers from a severe impairment;
(3)  The impairment must meet or equal the severity criteria contained in the Social Security Regulations;
(4)  The claimant must not have the RFC to return to any past relevant work; and
(5)  The claimant must be unable to perform other work.

*See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

The Commissioner imposes certain standards on the treatment of medical source evidence, 20 C.F.R. § 404.1502, one of which requires the ALJ to assign a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ does not grant controlling weight to the opinion of a treating physician, the ALJ must provide good reasons for that decision.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  An example of a good reason is that the treating physician's opinion is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence."  *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993)).  For instance, in *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013), we held that the ALJ properly discounted the subjective evidence gleaned from a treating physician's opinion because it too heavily relied on the patient's complaints.

Here, nothing Conner asserts persuades us that the ALJ did not properly evaluate the evidence of the record as a whole.  The ALJ sufficiently explained that Dr. Freeland's records failed to reveal the type of significantly abnormal findings that would qualify a patient as

disabled. (R. 7-3, PageID 54.) Further, Dr. Freeland's 2012 opinion conflicted with objective findings in the record, including those in her own notes as well as those of Conner's other treating doctors. The ALJ identified the discrepancies: "[a]lthough [Dr. Freeland] noted several diagnoses in treatment notes, it was repeatedly indicated during her physical examinations that the claimant was in no acute distress, had normal lung and heart function, and the only physical back examination by [Dr. Freeland] was noted in February 2011 which was normal." (*Id*. at 54–55.) The ALJ further stated that "[e]ven physical findings by OrthoMemphis in May 2012 were minimal with decreased sensation, tenderness of the paraspinal muscles, but full strength in the lower extremities and no need for surgery . . . Stern Cardiovascular examination in February 2012 also showed normal back and normal gait . . . Therefore, no weight can be given to [Dr. Freeland's] opinion." (*Id.*)

Admittedly, the ALJ did not discuss the 2013 opinion of Dr. Freeland. However, discussion of that opinion was unnecessary for the reasons explained in our analysis of Conner's second argument.

**B.**

Second, Conner contends that the ALJ erred in finding that he could perform other work. (Appellant's Br. 23.) Because Dr. Freeland's 2013 opinion was not discussed in the ALJ's decision, Conner contends that a court cannot then find that substantial evidence supported the Commissioner's decision that he could perform other work because, according to Conner, the record was incomplete. (Appellant's Br. 25.) This claim also fails, because we do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

It is true that the ALJ's failure to evaluate all opinions of record may denote a lack of substantial evidence to support the decision. *See Cole*, 661 F.3d at 937. However, here, the ALJ notes that Dr. Freeland's May 2013 medical source statement was prepared after Conner's insured status expired. "[E]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 264 n.6 (6th Cir. 1988)). Also, noteworthy is that the evidence from the October 2012 and May 2013 opinions does not support Dr. Freeland's assessment of an increased debilitating state. Rather, it only indicates ongoing treatment for the consistently same conditions with continued normal findings. (R. 7-13, PageID 470, 485–86.) The May 2013 opinion was not relevant because the evaluation process requires an assessment of Conner's condition during the relevant insured period. (R. 7-3, PageID 53–55.) We therefore hold that the Commissioner's decision was supported by substantial evidence.

## III.

Accordingly, we **AFFIRM** the district court's judgment.