NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0336n.06

Case No. 19-6295

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 09, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DERRICK L. THAXTON, | ) | |
|     Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **O P I N I O N** |
|     Respondent-Appellee. | ) | |

**BEFORE: COLE, Chief Judge; McKEAGUE and KETHLEDGE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Derrick Thaxton appeals the district court's decision affirming the Commissioner of Social Security's denial of Thaxton's application for Social Security disability insurance and supplemental security income benefits. Thaxton argues on appeal that the administrative law judge ("ALJ") failed to provide sufficient reasons for not giving controlling weight to a treating-source opinion. And this mistake, according to Thaxton, led to the erroneous determination that he retained the ability to perform a significant number of jobs in the national economy despite the mental limitations listed in his application. Finding any procedural error by the ALJ harmless, we affirm.

**I.**

**A. Background**

Thaxton worked in the riverboat industry. For several years prior to filing for disability benefits, he worked as a towboat captain on the Ohio river. Thaxton has struggled with anxiety, depression, bipolar disorder, and alcohol dependence most of his life.

In January 2013, Thaxton established care at Owensboro Psychiatry. In his initial visit, Thaxton's chief complaints were "anxiety, alcohol abuse, and Bipolar Disorder." The medical records indicated that his depression was "severe" and that he had panic attacks in public or around strangers. His mental examination indicated that he had a blunted affect and impaired judgment, but it also showed that he was calm, cooperative, and alert and had appropriate thought content. His treatment plan included a 12-step rehabilitation program and an inpatient detoxification program. Following the inpatient program, Thaxton again returned to Owensboro Psychiatry, where he stated he had been sober since the inpatient program, but that he had yet to attend Alcoholics Anonymous meetings because of his severe anxiety and agoraphobia.

Shortly after, in April 2013, the Coast Guard determined Thaxton was medically unfit for his position due to his "history of alcohol dependence requiring use of the medications Antabuse and Naltrexone with continued use of alcohol for which medical detox and rehabilitation was recommended." Thaxton then applied for social security disability insurance benefits and supplemental security income, alleging an onset date of March 15, 2013. On his application, Thaxton listed bipolar depression, anxiety, OCD, PTSD, and diabetes as the conditions that limit his ability to work.

In June 2013, upon request by the Social Security Administration, Thaxton presented to Marcy Walpert, M.A., for a consultative psychological examination. Walpert found Thaxton to

be depressed and very anxious but also noted that he was cooperative with clear, relevant, and coherent speech, normal psychomotor activity, and normal thought processes. Walpert noted that Thaxton had slight deficits in immediate memory but overall demonstrated good remote memory, good abstract reasoning, a good fund of knowledge, and a good ability to solve simple math problems. Despite this, Walpert found that it was "not likely that the claimant could tolerate the demands and stressors of [a] day-to-day work setting given his current level of mental illness symptoms."

The next month, Jill Rowan, Ph.D., reviewed Thaxton's records and determined that Thaxton's abilities to perform work-related activities were at most moderately limited. And in September 2013, Ed Ross, Ph.D., also reviewed Thaxton's records and similarly determined that Thaxton's abilities to perform work-related activities were, for the most part, not significantly limited. He found that only Thaxton's abilities to interact appropriately with the public, respond appropriately to changes in work setting, carry out detailed instructions, and maintain attention for extended periods were moderately limited.

In the meantime, Thaxton had established a treating relationship with psychiatrist Snehamala Veeravalli, M.D. Thaxton visited Dr. Veeravalli approximately every two months from 2013 to 2015. Dr. Veeravalli's medical records portray the severity of Thaxton's mental limitations due to his PTSD, bipolar disorder, anxiety, and agoraphobia. On the other hand, Dr. Veeravalli's records also portray instances where Thaxton showed improvement. Dr. Veeravalli observed that when Thaxton was taking his medication for PTSD, he stated his flashbacks were "less intense" and he was "getting them very rarely." And while Dr. Veeravalli reported that Thaxton presented with an anxious mood, she otherwise reported normal and appropriate examination findings. Additionally, Dr. Veeravalli noted Thaxton was cooperative and had goal-

directed thought processes, normal thought content, appropriate attention and concentration, normal recall and memory, and normal insight and judgment. In November 2013, Thaxton told Dr. Veeravalli that he was "doing almost good," explaining that he was enjoying time with his family, and he described his own mental status as "stable" with the prescribed medications. In the end, Dr. Veeravalli opined that Thaxton's PTSD, bipolar disorder, anxiety, and agoraphobia "severely affect his ability to perform work-related activities." Further, his symptoms made it "nearly impossible for him to interact with the public" and made it "extreme[ly] difficult" for him to leave his house. Dr. Veeravalli also noted that Thaxton's limitations were further diminished during periods of alcohol use, but his limitations remained severe during his periods of sobriety. And if Thaxton did return to work, he would likely miss three days per month.

In July 2015, Thaxton established a treating relationship with therapist Mary Edwards, L.P.C.A., which continued through October 2016. Edwards recorded Thaxton's severe limitations, noting he had severe bipolar disorder and at times his moods were in "rapid cycling" and his anxiety was "extremely high." But, consistent with other treating sources, she also noted that Thaxton had appropriate mood, appropriate affect, appropriate level and quality of participation, and appropriate thought process. And there were times when he showed progress; for example, Thaxton made "progress in controlling his moods" and even indicated that he wanted to go outside and interact with the public more. Throughout this time period and continuing into 2017, Thaxton had also maintained treatment at Owensboro Psychiatry, and the nurses' records there reflect a similar pattern: at times Thaxton presented more anxious and depressed than others, but Thaxton was also pleasant, cooperative, and actively engaged with normal behavior, speech, and thought processes.

### B. Procedural History

All the while, his application for disability benefits continued to work its way through the Social Security Administration and the United States District Court for the Western District of Kentucky. The Regional Commissioner of the Social Security Administration denied Thaxton's claims after initial review and upon reconsideration. Thaxton then timely requested a hearing before an ALJ. Following that hearing, an ALJ issued a written decision denying Thaxton's application. The ALJ there determined that Thaxton had severe impairments including bipolar disorder, anxiety disorder, and a history of alcohol dependence, but found that Thaxton could still perform a significant number of jobs. Thaxton filed a request for review with the Appeals Council, which was later denied. Thaxton then timely filed an action with the United States District Court for the Western District of Kentucky. *Thaxton v. Comm'r of Soc. Sec.*, No. 4:16-cv-00025-JHM-HBB, Document 15, at 6 (W.D. Ky. July 31, 2017). The district court found the ALJ's decision was flawed because instead of simply assigning less weight to Thaxton's treating-source opinions in light of the objective evidence in the record, what the ALJ did was more analogous to interpreting raw data. *Id.* at 7. The district court noted that the ALJ was not in a position to "cherry-pick" the record and that the ALJ offered little by way of "good reasons" for its conclusions. *Id.* at 7. Accordingly, the district court remanded, and the Appeals Council in turn remanded for a de novo hearing and decision. Upon remand and following a hearing, a different ALJ issued a new decision. The ALJ still found Thaxton capable of performing a number of jobs available in the economy. Thaxton then filed a second complaint with the United States District Court for the Western District of Kentucky, and the district court affirmed the final decision of the Commissioner. It is this second ALJ's decision that is the subject of this appeal.

**C. The ALJ's Decision**

The ALJ followed the five-step process as required by 20 C.F.R. §§ 404.1520, 416.920. After noting that Thaxton was not gainfully employed, the ALJ determined that Thaxton had the following severe impairments: bipolar disorder, anxiety disorder, and alcohol use disorder. The ALJ found that those impairments or combination of those impairments did not meet or medically equal a listed impairment. The ALJ next moved on to determine Thaxton's residual functional capacity. It is at this juncture we see the greatest difference in the ALJ's analysis on remand.

To make the residual functional capacity determination, the ALJ started by examining the totality of the evidence. In great detail, the ALJ summarized Thaxton's visits with his treating psychiatrists and therapists, including Dr. Veeravalli, Mary Edwards, and the nurses at Owensboro Psychiatry. The ALJ also examined Marcy Walpert's records and her determination that Thaxton's severe mental limitations made it unlikely he could work a sustained job.

After examining the totality of the evidence, the ALJ found Thaxton's allegations of disability were "not entirely consistent with the medical evidence and other evidence in the record." Against this backdrop, the ALJ then went on to explain what weight it was giving relevant evaluations and the reasons for that weight assigned. The ALJ assigned Walpert's evaluation (requested by the SSA) "little weight." The ALJ explained that, while Walpert noted Thaxton had a fear of social settings, had three to four panic attacks weekly, and appeared anxious and depressed, Walpert also noted that Thaxton remained cooperative with normal speech, normal thought processes, and normal psychomotor activity throughout the examination. The ALJ found that the severity of the stress-tolerance limitations noted by Walpert were not supported by her own examination findings. The ALJ also assigned "little weight" to Dr. Veeravalli's treating-source opinion. The ALJ pointed to specific instances within Dr. Veeravalli's records where she

observed normal affect, normal behavior, appropriate attention and concentration, and normal insight and judgment. The ALJ explicitly recognized that the Commissioner had previously failed to adequately justify the weight assigned to Dr. Veeravalli's treating-source opinion. This time, the ALJ stated that after a "detailed review of Dr. Veeravalli's treatment records," the severity of the limitations "opined is inconsistent with the relatively unremarkable mental status findings reported by Dr. Veeravalli" herself. In providing reasons for assigning little weight to Dr. Veeravalli's and Walpert's opinions, the ALJ also found it significant that even Thaxton testified that he would continue to work as a towboat captain had he not been terminated.

In the end, the ALJ assigned little weight to Walpert's and Dr. Veeravalli's opinions and great weight to state agency psychological consultants who opined the claimant has no greater than moderate work-related mental impairments. The ALJ ultimately found Thaxton retained the ability to perform full-time sustained work activity.

Thaxton argues that the ALJ's analysis was flawed because the ALJ didn't offer "good reasons" for not giving controlling weight to Dr. Veeravalli's treating-source opinion. We find the ALJ offered good reasons for the weight assigned to Dr. Veeravalli's opinion and therefore find that any procedural error it may have committed was harmless.

## II.

### A. Standard of Review

We review legal questions, including whether the ALJ applied the correct legal standard, under a de novo review, but we otherwise review an ALJ's findings under the deferential substantial-evidence standard. *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 745 (6th Cir. 2018). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d

778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  And if such evidence exists to back up the ALJ's decision, we should defer even if substantial evidence in the record could have supported the opposite conclusion.  *Cardew*, 896 F.3d at 745 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).

### B. Procedural Requirements of 20 C.F.R. § 404.1527

The Commissioner is tasked with determining whether a claimant has physical or mental impairments of such severity that would prevent the claimant from continuing past work or engaging in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2).  When making these determinations, an ALJ must follow certain procedural rules to ensure a fair process.  *Blakley*, 581 F.3d at 406–07.  One such rule is known as the "treating physician" rule—which applies to claims filed before March 27, 2017, like Mr. Thaxton's.  20 C.F.R. § 404.1527(c)(2).  A treating physician is someone who has an ongoing relationship with the claimant.  *Id.* at § 404.1527(a)(2).

The Commissioner must give treating-source opinions controlling weight if two conditions are met:  "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)).  If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed by balancing several factors:  "length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)–(6)) (internal citations omitted).  In all cases, the treating-source opinion is entitled to deference, even if not controlling, and cannot be completely disregarded.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

In addition to balancing the above factors, an ALJ is required to provide "good reasons" for the weight it assigns the treating-source opinion. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c)(2). In the past, we have referred to this as the "good reasons" rule. *Cole*, 661 F.3d at 938. These reasons must be supported by evidence in the record and must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating-source opinion and reasons for that weight. *Id.* (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). Giving good reasons for the weight assigned to a treating-source opinion serves the purpose of letting "claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not." *Id*. at 937–38 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The failure to comply with these procedural requirements "warrants a remand unless it is harmless error." *Gentry*, 741 F.3d at 723.

To start, the ALJ here recognized that Dr. Veeravalli's opinion is a treating-source opinion, which no one contests. However, the ALJ's decision otherwise tests the contours of the procedural requirements of § 404.1527. The district court on remand cited the rule that treating-source opinions must be given controlling weight, unless the exceptions apply—in which case, an ALJ must balance the factors to assign a certain weight to the opinion. The district court was very clear that the ALJ had to give "good reasons" for what weight it chose to give Dr. Veeravalli's treating-source opinion. The ALJ knew all of this when making its determination on remand. However, the ALJ did not even once mention the term "controlling weight." And the ALJ did not balance the factors listed in § 404.1527(c) to make the determination of what weight to assign

Dr. Veeravalli's opinion. But, in any event, we find any procedural mistake here a harmless *de minimis* error. *Cf. Blakley*, 581 F.3d at 409.

### C. Harmless Error

A procedural error may be considered harmless if 1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; 2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) the Commissioner has met the goal of the procedural safeguard of providing good reasons. *Wilson*, 378 F.3d at 547; *see also Blakley*, 581 F.3d at 409. As for the third reason, we have said that harmless error is saved for the "rare case" where the ALJ has met the "goal" of § 404.1527, "if not meeting its letter." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (per curiam). This certainly is such a case.

To meet this goal, the ALJ's decision, at the very least, must *implicitly* provide sufficient reasons for giving less weight to treating-source opinions; merely indicating a rejection of the treating-source opinions is not enough. *Nelson*, 195 F. App'x at 470 (citing *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005)). In *Nelson*, this court found that an ALJ's discussion of the record evidence as a whole sufficiently showed that two treating-source opinions were not consistent with the record, even though discussion of those treating-source opinions was brief. *Id.* at 470–71. The goal is to provide sufficient notice to a claimant and not offend a claimant's rights to due process. *Blakley*, 581 F.3d at 410.

Here, the ALJ provided sufficient reasons for giving little weight to Dr. Veeravalli's opinion, and those reasons weren't even implicit—they were specific, detailed, and backed by substantial evidence. Those reasons meet the goal of § 404.1527: to inform Thaxton of the reasons for the denial of his application and to provide sufficient evidence for a meaningful review.

Any remand would be fruitless. While not explicitly stating that treating-source opinions are given controlling weight, the district court on remand instructed the ALJ that treating-source opinions are given controlling weight absent two exceptions. *Thaxton*, 4:16-cv-00025, Document 15, at 6 (citing *Gayheart*, 710 F.3d at 375–76). And while not explicitly balancing the factors listed in § 404.1527(c)(2)–(6), the ALJ considered the length of Thaxton's ongoing relationship with Dr. Veeravalli and recognized her credentials. Indeed, the ALJ was instructed by the district court in its remand order to provide "good reasons" for the weight it assigned to Dr. Veeravalli's opinion. *Id*. And the ALJ listened. The ALJ essentially summarized in great detail every consultation Thaxton had—the good and the bad. After having the benefit of a summarized record, the ALJ then provided specific reasons for why Dr. Veeravalli's conclusion regarding Thaxton's inability to work was not only unsupported by the record as a whole but also not even supported by Dr. Veeravalli's own medical records.

Thaxton acknowledges that the ALJ discussed the "entirety of [his] history of treatment for his mental illness." But Thaxton argues that the ALJ never provided specific reasons for the weight given, as is required. Quite the contrary. The ALJ did indeed discuss the entirety of the record, but after doing so, the ALJ then, on top of the summary of the record, provided further specific reasons for giving little weight to Dr. Veeravalli's opinion.

Thaxton next tries to argue that the ALJ "cherry pick[ed]" the record to point to doctor visits where Thaxton was doing better and highlighted "random instances" when Thaxton was able to leave his house to run errands. The district court used this exact language in its remand order the first time around: that the ALJ is not in a position "cherry-pick" the record. *Thaxton*, No. 4:16-cv-00025, Document 15, at 7. While this may have been true before, the ALJ's decision

before us now does not do that. Even Thaxton recognizes that the ALJ here "repeated[ly] references . . . Mr. Thaxton's severe diagnoses and their associated symptoms."

Moreover, substantial evidence in the record supports the ALJ's reasons for granting less weight to Dr. Veeravalli's opinion. *Blakley*, 581 F.3d at 406–07. The ALJ has neither misstated nor mischaracterized the record, and reasonable minds would accept the ALJ's conclusion that Thaxton is able to work, despite Dr. Veeravalli's observation that Thaxton would have difficulty working.

Contrast the ALJ's decision here to decisions that we have found warrant remand. In *Cole*, we found reversible error where an ALJ failed to assign any weight to the treating-source opinion, and we found that error couldn't be harmless. *Cole*, 661 F.3d at 938. Here, the ALJ assigned some weight to Dr. Veeravalli's opinion and relied on it to make a final residual functional capacity determination. Further, in *Cole*, we found that the ALJ's decision contradicted the claimant's own testimony. *Id.* at 938–39. Not so here. The ALJ found it significant that Thaxton testified himself that he would continue to work as a towboat captain if not for his termination. Indeed, in making its determination, the ALJ relied on Thaxton's own statements throughout his medical records that he was "doing better."

This is not a case where the ALJ failed to discuss enough evidence, which would prevent us from determining whether there is substantial evidence to support the ALJ's conclusions. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011). We have said there must be "some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Id.* Here, the ALJ's effort is recognized in the pages of detailed explanations of the discrepancies between some opinions and others, and

in particular, the discrepancy between Dr. Veeravalli's conclusion regarding Thaxton's ability to work and the record as a whole.

## III.

For these reasons, we affirm.